**Andrew KISSADAY, Plaintiff,**

**v.**

**Frank ALBANESE, Edra Haulage, Inc., Raphael Mana and Edward De Roia, doing business under the firm name and style of Edra Haulage Company, Defendants.**

**Civ. A. No. 18337.**

United States District Court
E. D. New York.
May 17, 1961.

Reilly & Reilly, New York City, for plaintiff; Emmet J. Agoglia and Harold V. McCoy, New York City, of counsel.

Eisenberg & Rockower, Brooklyn, N. Y., for defendants; Henry R. Eisenberg, Brooklyn, N. Y., and John A. Dwyer, New York City, of counsel.

BYERS, District Judge.

This is an assault case in which the plaintiff seeks recovery for bodily injuries said to have resulted therefrom. He has sued the individual, Frank Albanese, whom he seeks to hold liable, and the latter's corporate employer, Edra Haulage, Inc.

The theory upon which he relies as to the latter, is that the assault was committed in furtherance and discharge of his employer's business, within the purview of certain cases later to be referred to, and therefore the employer should be held according to the principles of *respondeat superior.*

The facts as to the assault are not in substantial controversy. The place is agreed to have been the loading platform of American Stores, in Kearney, New Jersey. The date was January 19, 1956, the time being between 8:00 and 10:00 a. m. Diversity jurisdiction is based on plaintiff's New Jersey residence and citizenship, while that of Albanese and his employer are of New York.

Plaintiff and Albanese were driving motor trucks in the course of the employment of each, and reached the premises of American Stores at around or shortly after 7:00 o'clock on this morning.

By some process, plaintiff seems to have appropriated a position in the line of trucks, in advance of that of Albanese, who had arrived earlier. This led to a verbal altercation that came to a head on the loading platform; the man in charge there was Paul Best, who was a witness. Seemingly the dispute between the two drivers as to whether plaintiff had indeed backed his truck to the platform out of turn, was resolved by the checker, in favor of the plaintiff's retaining the position which he had gained. This led to the further interchange of heated, profane and indecent remarks which were calculated to evoke physical reprisal, and that occurred. Both men used their fists but without inflicting more than casual injury.

It is not that of which plaintiff complains. He says that during the brawl, Albanese kicked him in the groin and harmed him so severely that he fell to the platform in great pain, and that he suffered so acutely that he lay upon the platform ten or fifteen minutes, unable to move, during which time no one offered him any help or assistance.

His testimony as to this result is contradicted by Albanese, Smith, a truck driver who was an eye witness to the altercation prior to the brawl, and to the fact that both men had their hands up and each made a pass at the other, but Smith saw no blow struck. He did not

see Albanese kick plaintiff, nor did he see the latter fall to or lie upon the platform. He said that there were from eighteen to twenty-three men on the platform at the time. It is significant that none of these was called as a witness.

Best testified that he recalled the altercation, and saw these two men engaged in a struggle, and went over to them, called upon them to stop, and separated them, that neither fell, and both walked away along or across the platform. Specifically that he did not see plaintiff lying on the platform although he kept them both under observation for about five minutes.

It is plaintiff's testimony that after resting for a time, he proceeded to unload his truck, and later drove it to his employer's place in Jersey City. He complained of his pain, knocked off during the afternoon, and drove his own car to his home in Elizabeth.

This testimony is related in some detail in order to reach a fair conclusion as to the actual nature and extent of the plaintiff's injuries resulting from this episode.

█ If he had complained, for instance, of a black eye, his assent to such a consequence by entering into the fracas, might stand in the way of recovery. Re-Statement Torts, Sec. 60. However he cannot be deemed to have consented to the infliction of such an injury as he here asserts. A discussion of such matters in 6 Am.Law Reports Ann., at page 388 et seq. is informative.

Therefore it is necessary to inquire whether the credible testimony sustains his assertions. Plaintiff says that he reported his condition to his wife on arrival at his home, and exhibited the affected area to her, and that the groin was black and blue and swollen, as was his left testicle. That his wife provided an ice-pack which was applied to the affected parts. (The wife was not called as a witness.) He said that he did not return to work for a period of ten days. That he first called a doctor two days after the happening, which would be January 21, 1956.

Dr. O'Grady testified that he first saw the plaintiff on January 26, or five days later than as stated by the plaintiff. He found the left testicle to be bruised and swollen to four times its natural size. He next saw him on a date not disclosed in February, and found the said swelling to have been reduced to two and one-half times natural size. He advised therapy and that the plaintiff wear a jock-strap.

He next saw the plaintiff in St. Barnabas Hospital on May 17, where he performed an operation to correct a bilateral inguinal hernia, and the patient was discharged on May 25, 1956.

Further, that the examination of January 26, 1956 disclosed no evidence of a then existing hernia.

When asked a hypothetical question as to whether the injury said by plaintiff to have been suffered on January 19, 1956 was a competent producing cause of the hernia, he replied that he could not answer the question "Yes" or "No."

Since the plaintiff resumed his regular occupation on or about January 29, 1956, and that involved the lifting of boxes and packages on to and from his truck, of an average weight of 25 pounds, it is a fair inference that the hernia in a man who was 54 years old and weighed 140 pounds and was 5 feet 6 inches tall [these facts were stipulated] was the result of something other than the injury observed by the doctor on January 26, 1956.

█ It could have been caused by some unusual exertion put forth in plaintiff's regular occupation. It cannot be said that the evidence would sustain a finding that the hernia was caused by what occurred in the platform brawl of January 19, 1956; therefore such a finding is refused.

█ The testimony of Dr. O'Grady as to the plaintiff's condition as he observed it on January 26, 1956 cannot be ignored. While it is possible that the plaintiff's then condition could have been otherwise caused than by the brawl of January 19th, there is nothing in the testimony

or reasonable inference therefrom, so to suggest. The plaintiff's version of the entire incident cannot be relied upon, for reasons above recited, but the actual occurrence may have involved a thrust of Albanese's knee against the plaintiff's groin, and that probability is sufficient to make out the plaintiff's case as the Court has understood the testimony.

Assuming that plaintiff's injury is thus to be attributed to Albanese, the question of damages is limited to his pain and suffering, since no loss of earnings has been proven. If the Court is in error as to this matter, [no transcript of the record has been provided] the subject may be re-examined by appropriate motion.

■ It is concluded that for pain and suffering the plaintiff should have judgment against Albanese, in the sum of $350, since no permanent disability has been demonstrated.

With regard to the plaintiff's cause against Edra Haulage, Inc., the Court has examined the New Jersey cases relied upon by plaintiff, for it is agreed that the law of that State controls. It may be thus quoted from Gindin v. Baron, 11 N.J.Super. 215, 78 A.2d 297, 300:

"The rule * * * may now be stated * * * that the liability of the master for the willful and malicious tortious acts of the servant at present extends to every case where the act of the servant is committed with a view to the furtherance and discharge of his master's business and within the scope and limits of his employment" [citing cases].

Another statement appears in Klitch v. Betts, 89 N.J.L. 348, 98 A. 427, 429:

"To rebut the presumption of liability of a master for damage consequent upon the negligent act of a servant, done within the apparent scope of the latter's employment, it must be shown, either that the act was purely wanton, or that it was not performed in furtherance of any duty within the actual scope of the servant's authority."

The foregoing statements are thought to control this case; in none of those relied upon does it appear that the furtherance of the employer's business is entirely absent, as the Court here finds.

■ There was nothing that Albanese could hope to accomplish in furtherance of his employer's business by his conduct in assaulting the plaintiff after the checker had confirmed the priority of plaintiff's truck as it had been backed up to the platform. The brawl was the result of irritation on the part of Albanese because he had been out-maneuvered by plaintiff, and it was thus the expression of resentment personal to the former. The intensity of that resentment could not affect the position of the truck, nor of the plaintiff's opportunity to unload the crates or packages his truck was carrying, which he proceeded to do. Thus this case is to be distinguished from each one cited in plaintiff's brief.

There was no testimony offered by plaintiff to establish belligerent characteristics on the part of Albanese, with knowledge of which his employer was chargeable. He was a long-time employee whose record was free from any blemish so far as the testimony shows, and thus there is no basis for liability on the part of the employer, which means that the complaint is dismissed as against Edra Haulage, Inc.

Judgment is awarded to the plaintiff as against Albanese, to be settled on notice. If additional findings are required, they are to be similarly settled.