**BANQUE WORMS, Plaintiff,**

**v.**

**LUIS A. DUQUE PENA E HIJOS, LTDA., Luis A. Duque, Victor Duque, Camilo Bautista, Fernando Bautista, Flota Mercante Grancolombiana, S.A., and Ramon Abadia, Defendants.**

**No. 86 Civ. 2684 (GLG).**

United States District Court, S.D. New York.

Feb. 5, 1986.

Slade & Pellman, New York City, for plaintiff; Eric D. Statman, of counsel.

Owen & Fennell, New York City, for defendant Flota Mercante Grancolombiana, S.A.; Darrell K. Fennell, Ronald C. Minkoff, of counsel.

## OPINION

GOETTEL, District Judge:

In this action, the plaintiff alleges that the various defendants defrauded it of eight million dollars. In addition to claims of common law fraud, the plaintiff alleges violations of section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp. III 1985) ("RICO"). Because the parties are all aliens, the RICO count is the only basis for federal subject matter jurisdiction. One defendant, Flota Mercante Grancolombiana, S.A. ("Flota") moves to dismiss all claims against it pursuant to Fed.R. Civ.P. 12(b)(6), for failure to state a claim on which relief can be granted, or, alternatively, on grounds of *forum non conveniens.*

Plaintiff Banque Worms (the "Bank") is a French banking corporation with offices throughout the world, including New York. Defendant Flota is a Colombian merchant shipping line with offices in New York City. The other corporate defendant is Luis A. Duque Pena E Hijos, Ltda. ("Duque Ltda.") a Colombian corporation that exports coffee beans from Colombia. The individual defendants are Luis A. Duque,[1] Victor Duque, Fernando Bautista, Camilo Bautista, and Ramon Abadia, all Colombian citizens. Luis and Victor Duque were principals of Duque Ltda. The Duques and Fernando Bautista were principals of the Colombian Coffee Corporation ("Colombian Coffee"), a New York corporation that imported coffee beans to be sold to roasters. Camilo Bautista was an officer of the General Coffee Corporation ("General Coffee"), a Florida coffee roaster. Ramon Abadia was employed by Flota as a port agent in Bucamaranga, Colombia. *See infra* note 2. Victor Duque and the two Bautistas are currently incarcerated in federal prisons in the south. Luis Duque is in Colombia. Both Colombian Coffee and General Coffee filed for reorganization under Chapter 11 of the United States Bankruptcy Code in

1983; neither company appears to be conducting business at this time. Flota is, therefore, the only "deep pocket" defendant.

This case arises from a scheme to defraud the Bank by the presentation of forged bills of lading, representing non-existent cargos of coffee, as collateral for loans and advances from plaintiff totaling almost eight million dollars. The Bank had a credit arrangement with Colombian Coffee whereby the Bank financed Colombia Coffee's purchase and importation of coffee beans into the United States. The usual arrangement went as follows: Colombian Coffee purchased coffee beans from Duque Ltda. in Colombia. The beans were shipped to the United States by Flota. Flota issued bills of lading to the purchaser evidencing shipment of the beans. The bills of lading were presented to the Bank for monetary advances before the arrival of the coffee beans in the United States. Colombian Coffee sold the beans to roasters in the United States, frequently General Coffee, using the proceeds from the sales to repay the Bank. The presentation of the bills of lading occurred at the Bank's offices. It was the Bank's policy to release funds to Colombian Coffee only upon presentation of bills of lading bearing defendant Flota's seal.

According to the plaintiff, in a scheme to generate non-existent collateral with which to defraud a number of banks in New York City, Colombian Coffee and the defendants misappropriated Flota bills of lading, forged their contents, and presented them to banks, including the plaintiff, for advances and loans. The loans and advances were never repaid. The bills themselves were Flota bills of lading, which appeared to be issued by Flota. Flota does not deny that the bills are on its forms, but claims that they were not issued in the ordinary course of business.

Flota is charged with fraud and racketeering as a participant in this scheme

---

**1.** Alberto Duque, a son of Luis, is referred to as a defendant in the papers filed on this motion, but he is not so named in the complaint.

through the acts of its port agent Roman Abadia.[2] Abadia supposedly sold the pre-stamped Flota bills of lading to the Duques, Bautistas, or their agents to further the scheme to defraud the Bank. The complaint identifies neither the persons who bought these bills from Abadia, nor the dates of the sales. It also fails to allege the number of occasions on which these sales took place. Abadia is the only Flota employee identified in the complaint as a participant in the scheme. The Bank does not assert that the company itself, its officers, or any management level employees of Flota were aware of, or benefitted from, the scheme. Flota asserts that the bills of lading were unauthorized, and issued without the knowledge of any managing or supervisory personnel. Indeed, Flota maintains that it too was a victim of the scheme.[3]

According to the plaintiff, the Duques and Bautistas completed the pre-stamped bills with false information and presented them to the Bank. Of the six banks that were victims of the fraud, only the plaintiff charged Flota with racketeering. All of the other defendants in this case are charged with racketeering, but, as indicated above, it appears that only defendant Flota has the resources to pay a judgment of this size.

The notion that a corporation should be vicariously responsible under RICO for the independent fraudulent acts of one of its employees is a rather startling one. By its plain terms, RICO only imposes liability on corporations that benefit from the racketeering activity. Indeed, the initial intent of the statute was to *protect* corporations from criminal infiltration, not to make them the responsible parties.[4] As Judge Sweet has noted, to hold the corporation liable under RICO for the independent acts of malefactors at a low corporate level would be a bizarre result. *Intre Sport Ltd. v. Kidder, Peabody & Co.*, 625 F.Supp. 1303 (S.D.N.Y.1985), *aff'd without opinion*, 795 F.2d 1004 (2d Cir.1986). *Accord Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982).

The plaintiff attempts to take this giant step by analogizing to antitrust laws, such as the Sherman Act, citing *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). This attempted analogy has been specifically rejected by the First Circuit in *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 33 (1st Cir.1986), in which the court noted that "[t]he concept of vicarious liability is directly at odds with the congressional intent behind section 1962(c) [of RICO]." *Id.* at 32. The plaintiff also cites *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), in support of its theory of vicarious responsibility under RICO. Plaintiff's reliance on *Haroco* is misplaced. The plaintiff cites to a footnote in *Haroco*, which, when taken out of context, lends

---

**2.** Flota says Abadia was not its employee; rather, he was the employee of an independent contractor. Flota also states that Abadia's function in the issuance of documents was quite different from that alleged. For purposes of the motion to dismiss, we must accept the allegations of the complaint.

**3.** When the alleged fraud was discovered in May 1983, Flota instigated criminal proceedings against the Duques and Bautistas in Colombia. The plaintiff voluntarily intervened in the criminal investigation as a civil party. By intervening, the Bank could participate in the pretrial court-conducted investigation into the scheme and obtain compensation for the damages occasioned by the fraud upon the disposition of the case in Colombia.

**4.** The rather broad draftsmanship of RICO has resulted in its expansive application. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A professor who served as a draftsman for the bill has stated that this broad application is what *he* intended. There is no indication, however, that the Congress which passed the bill was adopting *his* intentions. The Senate Report on the legislation states that the purpose of the act is "the elimination of the infiltration of organized crime and racketeering into legitimate organizations." Organized Crime Control Act of 1969, Report of the Comm. on the Judiciary, S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969), U.S. Code Cong. & Admin.News 1970, p. 4007.

some support to its argument. However, the entire thrust of the Seventh Circuit's holding is to reject corporate liability under section 1962(c) of RICO "when the corporation is itself the victim or target, or merely the passive instrument for the wrongdoing of others." *Id.* at 401.

A number of other district courts have similarly rejected vicarious liability under RICO when the employer/corporation is a passive victim of racketeering activity. *See, e.g., Continental Data Systems, Inc. v. Exxon Corp.,* 638 F.Supp. 432, 440 (E.D. Pa.1986); *Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1195 (S.D.N.Y.1985); *Intre Sport Ltd., supra,* 625 F.Supp. at 1309; *Dakis v. Chapman,* 574 F.Supp. 757, 760 (N.D.Cal.1983); *Parnes v. Heinold Commodities, Inc., supra,* 548 F.Supp. at 24 n. 9. The plaintiff attempts to distinguish these cases by claiming that they focus on the distinction between the RICO "person" and the RICO "enterprise," finding that an "enterprise" cannot also be liable as a "person" under section 1962(c). The plaintiff argues that Flota is not the enterprise in this action, but should be responsible for the acts of the "person," its employee Abadia, because the latter acted with the force of the corporation behind him. This yields the absurd result specifically denounced in the above cases, *i.e.,* holding an innocent corporation liable for the unauthorized wrongdoing of a lower level employee.

■ The plaintiff next argues that a corporation may be held responsible for the unauthorized acts of an employee. However, it has always been the law of New York that such liability exists only when those acts are committed within the scope of employment. *See David Crystal, Inc. v. Cunard Steamship Co.,* 339 F.2d 295, 299 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 1340, 14 L.Ed.2d 271 (1965); *Sauter v. New York Tribune,* 305 N.Y. 442, 444, 113 N.E.2d 790, 791 (1953); *Oneta v. Paul Tocci Co.,* 271 A.D. 681, 693, 67 N.Y.S.2d 795 (1st Dep't 1947), *aff'd,* 297 N.Y. 629, 75 N.E.2d 743 (1948). An employer who is acting in good faith and who has not induced an employee to commit an intentional tort is not liable for the employee's acts. *See Moscarelli v. Stamm,* 288 F.Supp. 453, 460–61 (E.D.N.Y.1968); *O'Connor v. Western Freight Association,* 202 F.Supp. 561, 566 (S.D.N.Y.1962); *Kissaday v. Albanese,* 194 F.Supp. 157 (E.D.N. Y.1961); *Rymanowski v. Pan American World Airways, Inc.,* 70 A.D.2d 738, 416 N.Y.S.2d 1018 (3d Dep't 1979); *Moritz v. Pines Hotel, Inc.,* 52 A.D.2d 1020, 383 N.Y. S.2d 704 (3d Dep't 1976).

The plaintiff further argues that, under such legal theories as negligent supervision, estoppel, or apparent authority, an employer may still be liable for acts of its employee that are not within the scope of employment. Specifically, the plaintiff alleges that Flota's employee, Abadia, had apparent authority. Flota could be liable for its employee's acts on an apparent authority theory only if Flota had caused the Bank to believe that Abadia possessed such authority, a circumstance not present here. *See General Overseas Films, Ltd. v. Robin International, Inc.,* 542 F.Supp. 684 (S.D. N.Y.1982), *aff'd,* 718 F.2d 1085 (2d Cir. 1983); *Greene v. Hellman,* 51 N.Y.2d 197, 412 N.E.2d 1301, 433 N.Y.S.2d 75 (1980). Moreover, the Bank had no direct or indirect dealings with Abadia; rather, the individual codefendants were allegedly utilizing Abadia's services to further their scheme.

■ The plaintiff does not claim that Abadia's actions were authorized. When forged documents are completed by an unauthorized employee, the corporation is not normally responsible. *See David Crystal, Inc. v. Cunard Steamship Co., supra,* 339 F.2d at 299. However, even if a cause of action could be stated in contract on a theory of apparent authority, that does not constitute a RICO claim for fraud. When a corporation has been more a victim than a perpetrator, it would be a distortion of both the language and intent of the statute to hold the corporation vicariously responsible under RICO for an elaborate fraud merely because one of its employees may have contributed to the scheme.

Since the complaint fails to state a cause of action against Flota under RICO, which is the only basis for federal jurisdiction, we need not consider the alternate grounds for dismissal, *i.e.*, failure to allege a pattern of racketeering activity and failure to plead the fraud and RICO claims with particularity. Nor do we consider whether the action should be dismissed because of *forum non conveniens.*[5] The motion to dismiss the action as to Flota is granted.

SO ORDERED.

---

**5.** We note, however, that all parties to this action are aliens and the fraud was perpetrated primarily in South America (and entirely there as it relates to Flota). The case is, therefore, distinguishable from Judge Duffy's decision in *French American Banking Corp. v. Flota Mer-* *cante Grancolombiana, S.A.,* 609 F.Supp. 1352 (S.D.N.Y.1985), in which the plaintiff (a New York corporation) had no branch in Colombia, South America, and the loan was made entirely in New York.