Roselyn KAHN, Jan Kahn, individually and as custodian for Brad Michael Kahn and Brendan Adam Kahn under the Uniform Gifts to Minors Act, Craig Kahn, individually and as custodian for Alex Kahn under the Uniform Gifts to Minors Act, Jan Kahn and Craig Kahn as Trustees for and on behalf of Four Seasons Manufacturing Co., Inc. Pension Trust and Jan & Craig's Window Factory, Ltd. by its Trustee, Ronald Lipshie, Plaintiffs,

v.

CHASE MANHATTAN BANK, N.A., Thomas J. Greene, Gruntal & Co., Inc., Woodmere Securities, Inc., Richard Cahn, Bruce C. Black, Sheppard Messing, Jeffrey P. Berg, Matthias & Berg and Michael R. Matthias, Defendants.

No. 90 Civ. 2824 (LMM).

United States District Court, S.D. New York.

March 29, 1991.

370

Eric H. Moss, Great Neck, N.Y., for plaintiffs.

Andrew Kosloff (argued), Kent T. Stauffer, Chase Manhattan Bank, Litigation Div., New York City, for defendant Chase Manhattan Bank, N.A.

David Rivkin (argued), Debevoise & Plimpton, Lionel G. Hest, Sr. Vice President and Gen. Counsel, Gruntal & Co., Inc., New York City, for defendant Gruntal & Co.

Eric Babat, Jackson & Nash, New York City, for defendants Jeffrey P. Berg, Michael R. Matthias and Matthias & Berg.

## MEMORANDUM AND ORDER

McKENNA, District Judge:

Defendants Chase Manhattan Bank, Matthias & Berg, Jeffrey P. Berg, and Michael R. Matthias each move to dismiss the plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Securities Exchange Act of 1934, and state law, and defendant Gruntal & Company moves to dismiss plaintiff's RICO claim. For the reasons stated below, the motion of Gruntal & Company is granted, and the motions of Chase Manhattan Bank, Matthias & Berg, Jeffrey P. Berg and Michael R. Matthias are granted in part and denied in part. These motions and the underlying case arise out of a series of fraudulent financial transactions, orchestrated by defendant Bruce Black, which together deprived the plaintiffs of over $800,000 and forced Jan & Craig's Window Factory, Ltd. into bankruptcy.[1]

## BACKGROUND

Black was hired by Gruntal & Company as a registered representative in 1986 after being discharged from a similar position with Merrill Lynch for engaging in unauthorized trading in customers' accounts. Black was dismissed by Gruntal in Novem-

1. The facts as recited in plaintiff's complaint are accepted as true for the purpose of deciding these motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure. *See, Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986).

ber, 1987, also for engaging in unauthorized trading.

Black then joined defendant Woodmere Securities, and in the winter of 1987–88, retained defendants Jeffrey Berg and Michael Matthias as attorneys for himself and Woodmere in various transactions. During the same period of time, Black transferred his personal checking account with defendant Chase Manhattan Bank to the Chase branch at 1149 Wantagh Avenue, Wantagh, New York. The officer in charge of the branch was defendant Thomas J. Greene.

In September, 1988, Jan and Craig Kahn were introduced to Black, who offered to obtain additional financing of not less than $2,000,000 for the Window Factory. Later that month Jan & Craig's Window Factory entered into a written Financial Consulting Agreement with Woodmere by which Woodmere promised to obtain the additional financing. The Window Factory then issued checks to Woodmere Securities in the amount of $125,000,[2] which represented an up-front retainer fee. Black endorsed these checks in the names of "Woodmere Securities, Inc./Bruce Black" and deposited them into his personal checking account at Chase with the aid of Greene, who knew that Black had no authority to deposit the checks into his personal account.

In October, 1988, plaintiff Roselyn Kahn, the mother of Jan and Craig Kahn, transferred her securities account from Shearson Lehman Hutton to Woodmere Securities, where Black would act as her stockbroker. Roselyn Kahn instructed Woodmere to sell all of the securities that had been transferred from Shearson to Woodmere. Woodmere issued three checks to Roselyn Kahn totalling in excess of $103,000, which represented the proceeds from the sales of the securities. Black then endorsed these checks with Roselyn Kahn's and his own names and deposited them into his personal account at Chase with the knowledge of Greene.

In November, 1988, Black suggested that Jan and Craig Kahn merge the Window Factory into Grason Industries, Inc., a public company whose sole asset was $265,000 in cash, which would enable Woodmere to finance the business through a secondary offering. Later in November, Black introduced the Kahns to defendant Jeffrey Berg, a partner in the Los Angeles law firm of Matthias & Berg, whom the Window Factory and Jan and Craig Kahn retained to represent them in the merger. In addition to a retainer agreement, the Window Factory executed two "Waiver of Conflict of Interest" forms which stated that Matthias & Berg represented Woodmere Securities (as well as Steven Scott and Capital Resources & Marketing, who had identified Grason to Black as a potential merger candidate) in ongoing matters unrelated to the merger. The waivers did not reveal that neither Black, Woodmere Securities, Scott, nor Capital Resources & Marketing would be represented by independent legal counsel in the merger.

In December, 1988, Jan and Craig Kahn delivered to Black two checks totalling $92,742.06 drawn on the account of and also made payable to plaintiff Four Seasons Manufacturing Co. Pension Trust for the purpose of opening an investment account with Woodmere for the Window Factory's pension plan. Black, with the knowledge of Greene, endorsed the checks as "Bruce C. Black, TTEE" and deposited them into his personal account at Chase. That same month Black formed "D.L. Cabot & Co., Inc.," which replaced Woodmere as underwriter for the Window Factory's securities. The Kahns executed a revised "Waiver of Conflict of Interest" form with Matthias & Berg that stated that the law firm represented D.L. Cabot in matters unrelated to the Window Factory transactions. The waiver did not disclose that D.L. Cabot would not have independent representation in those transactions, nor was it revealed that Berg and Matthias secretly owned 15% of D.L. Cabot.

In March, 1989, the merger between the Window Factory and Grason was consummated in Denver. Prior to the merger, Black altered the financial statements of

**2.** Only $95,000 worth of the checks cleared.

the Window Factory to reflect a net worth that was more than $1,000,000 greater than its actual value, and Berg used those statements at the closing of the merger. On March 15, 1989 the Window Factory paid $40,000 to the existing shareholders of Grason in satisfaction of one of the conditions of the deal, and the Window Factory took control of Grason, whose sole asset was $265,000 in cash. The Window Factory then turned over the $265,000 to Black, who distributed not less than $10,000 to Berg for legal services and absconded with the balance.

In early April, 1989, Black convinced Jan and Craig Kahn that it would not be possible to raise $2,000,000 in a public offering of Grason stock until some buying activity raised the price of the stock. To that end, Jan Kahn, acting as custodian for plaintiffs Brad Kahn and Brendan Kahn, issued two $10,000 checks from their college fund to D.L. Cabot for the purchase of Grason stock, and Craig Kahn, acting as custodian for plaintiff Alex Kahn, issued a similar $15,000 check. Black had previously opened two more checking accounts with Greene at Chase's Willow Wood Shopping Center branch in the names of "D.L. Cabot & Co., Inc." and "D.L. Cabot & Co., Inc. Client Trust Account." There was no proper corporate authorization from D.L. Cabot & Co. in Chase's files for either account. Black endorsed the checks "D.L. Cabot" and deposited them into the D.L. Cabot account at Chase.

In July, 1989, Black was arrested and charged in the United States District Court for the Eastern District of New York with violating federal mail fraud statutes.

## THE MOTIONS

### Gruntal

█ Defendant Gruntal & Co., charged under 18 U.S.C. § 1962(c) and (d) ("RICO"), moves to dismiss the complaint under Fed. R.Civ.P. 12(b)(1), 12(b)(6) and 9(b). The motion is granted because plaintiff has failed to satisfy RICO's requirement that the pattern or predicate acts, in this case approximately 15 instances of unauthorized trading in Gruntal customers' accounts as well as opening a brokerage account in a false

name, be a proximate cause of plaintiff's injury. See, Hecht v. Commerce Clearing House, 897 F.2d 21, 23–24 (2d Cir.1990) ("For our purposes, the RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence."). See also, County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir. 1990) ("The RICO statute states that those persons injured 'by reason of' a RICO violation may maintain a civil RICO claim. 18 U.S.C. § 1964(c). The phrase "by reason of" requires that there be a causal connection between the prohibited conduct and plaintiff's injury.'") (quoting Norman v. Niagara Mohawk Power Corp., 873 F.2d 634, 636 (2d Cir.1989)). Gruntal fired Bruce Black in November of 1987, almost a year prior to the time Black was introduced to the plaintiffs. All of the actions that proximately harmed the plaintiffs occurred after September of 1988, and there is no allegation that plaintiffs were touched or affected in any way by the predicate acts Black committed while at Gruntal. Accordingly, the complaint against Gruntal is dismissed.

### Chase

█ Defendant Chase Manhattan Bank, charged under RICO, Section 10(b) of the Securities Exchange Act of 1934 and state law, moves to dismiss the complaint pursuant to Fed.R.Civ.P. 9(b), 12(b)(6) and 12(f).

Chase's involvement in the transactions underlying this case was limited to its acceptance, via its employee Greene, of checks fraudulently endorsed and deposited by Bruce Black into his personal account. The checks related to the plaintiffs in this case totalled approximately $325,000. There is no allegation in the complaint that any employee or officer other than Greene knew of or was involved in this activity, that the acceptance of the checks reflected a corporate policy of Chase or that Chase did or could have benefited from Greene's misconduct. Accordingly, plaintiffs predicate their complaint that Chase is liable under RICO as a "person employed by or

associated with" an enterprise upon *respondeat superior*, with Chase to bear vicarious responsibility for Greene's actions.

The Second Circuit apparently has not spoken on whether or not *respondeat superior* is an appropriate basis for imposing civil liability under RICO. The weight of authority in this district and in other circuits is against such an application. *See D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir.1988) ("*Respondeat superior*'s premise is liability without fault, a concept inconsistent with the language of § 1962(c) as interpreted by this court. Imposing vicarious liability would defeat the purpose of RICO, 'which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.'") (quoting *Haroco v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 402 (7th Cir.1984)); *Luthi v. Tonka Corp.*, 815 F.2d 1229 (8th Cir.1987) (declining to impose vicarious RICO liability on a corporation whose chief financial officer fraudulently obtained stock while acting as an agent for the corporation, particularly since the corporation was a victim of the chief financial officer's activities); *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 32 (1st Cir.1986) ("The premise of *respondeat superior* is that one who is without fault may be held vicariously liable for the wrongdoing of another. W. Prosser, *Law of Torts* 458 (4th ed.1971). As our previous discussion of direct liability reveals, we think the concept of vicarious liability is directly at odds with the Congressional intent behind section 1962(c)."); *In re Citisource, Inc. Securities Litigation*, 694 F.Supp. 1069, 1080 (S.D.N.Y.1988) ("*Respondeat superior* had been rejected as a basis for liability under § 1962(c)."); *Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*, 652 F.Supp. 770, 772 (S.D.N.Y.1986) ("The notion that a corporation should be vicariously responsible under RICO for the independent

fraudulent acts of one of its employees is a rather startling one. By its plain terms, RICO only imposes liability on corporations that benefit from racketeering activity. Indeed, the initial intent of the statute was to *protect* corporations from criminal infiltration, not to make them the responsible parties."); *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1194–95 (S.D.N.Y.1985) ("Superimposing vicarious liability doctrines on the RICO criminality requirements would in this context permit the 'enterprise' which is the conduit for these activities, to become the defendant by way of imputation, in a transparent attempt to reach a deeper pocket than the actual violator or perpetrator of the predicate racketeering acts.").[3] *But see Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 453 (E.D.N.Y.1987) ("With respect to the issue of respondeat superior liability in the RICO context, the Court is persuaded that such liability in this factual setting is appropriate, notwithstanding the split of authority on the subject."); *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1083 (D.Del.1984) ("When conduct is proscribed by a federal statute and civil liability for that conduct is explicitly or implicitly imposed, the normal rules of agency law apply in the absence of some indication that Congress had a contrary intent."). This court agrees with the analyses of the First, Seventh, and Eighth Circuits, as well as other courts in this district, and finds that the independent acts of an employee not acting in his employer's interest are not a sufficient basis to hold the employer liable under RICO. Chase's motion to dismiss the RICO count of the complaint is therefore granted.

Chase also moves to dismiss plaintiffs' claim that Chase is liable for aiding and abetting a violation of § 10(b) of the Securities Exchange Act of 1934. In order to establish aider and abettor liability, "plaintiffs must prove (1) a securities law violation by a primary wrongdoer, (2)

---

**3.** Plaintiffs distinguish a number of the cases opposing *respondeat superior* liability under RICO on the ground that, in those cases, the court was trying to enforce the statutory requirement that the "person" who violates RICO be separate from the "enterprise" through which the violation is committed. This argument was considered and rejected by the court in *Banque Worms, supra,* as yielding "the absurd result specifically denounced in [those] cases, *i.e.,* holding an innocent corporation liable for the unauthorized wrongdoing of a lower level employee." *Id.* at 773.

knowledge of the violation by the person sought to be charged, and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2nd Cir.1983). When the alleged aider and abettor owed no fiduciary duty to the plaintiffs, as is the case here, the knowledge requirement is not satisfied by a showing of recklessness by defendant; rather, "the 'scienter' requirement scales upward—the assistance rendered must be knowing and substantial." *Id.* Plaintiffs, at paragraph 165[4] of the Complaint, plead that Chase, among others, has "knowingly and wilfully" violated § 10(b) and Rule 10b–5. Chase complains that such conclusory assertions do not satisfy the heightened scienter requirement for aider and abettor liability. While a conclusory statement, standing alone, that an alleged aider and abettor "knew" of the underlying fraud may not satisfy the requirements of Fed.R.Civ.P. 9(b), *see, IIT, An Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980), when such conclusions are accompanied in a Complaint by a more detailed description of the defendant's conduct, "[a]s a matter of pleading, more is not required." *Id.* at 924. Read in conjunction with the portions of the complaint that set forth the circumstances surrounding Chase's acceptance of the fraudulently endorsed checks, plaintiffs' averment of Chase's knowledge satisfies Rule 9(b) as well as the standards of scienter established by the Second Circuit in *Armstrong.*

■ Chase further argues that plaintiffs have failed to adequately plead that Chase "substantially assisted in the primary wrongdoing," as required by *Armstrong.* Chase attempts to break the causal connection between its actions and plaintiffs' loss by stating that "plaintiffs would have lost their funds regardless of whether the Woodmere checks were deposited into Bruce Black's account at Chase or into some other account." Needless to say, the possibility that other banks would have intentionally accepted the fraudulently endorsed

checks had Chase declined to do so does not remove Chase from the chain of proximate causation. Chase additionally argues that "plaintiffs must show that Chase's alleged acts caused both loss causation—that the acts caused the economic harm—and transaction causation—that the violations in question caused the plaintiffs to engage in the transaction in question." Chase's Reply Memorandum at 21. This is a misapplication of the standard set forth in *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 313 (2d Cir.1985) which establishes these causation requirements for the underlying violation of § 10(b), not with respect to the assistance rendered by an aider and abettor. *See, id.* ("To establish causation, the plaintiff must show 'both *loss causation*—that the misrepresentations or omissions caused the economic harm—and *transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question.' ") (quoting *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467). Plaintiff need only plead that the conduct of the primary wrongdoer satisfies the requirements of loss and transaction causation, not that of the accused aider and abettor, Chase.

Chase's final argument in favor of its motion is that "plaintiffs have failed to allege in connection with some of the transactions that there was an actual purchase or sale of a security in connection with the alleged fraud," Chase's Memorandum of Law at 23, as is required for an action under § 10(b). *Polycast Technology Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 941 (S.D.N.Y.1989) (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975)). Specifically, Chase notes that its role in the transactions involving Jan & Craig's Window Factory, Ltd. has not been connected with the actual sale or purchase of a security. Additionally, it is unclear from the Complaint and plaintiffs' Memorandum of

---

4. The paragraphs in the complaint are misnumbered. The paragraph referred to appears in between paragraph 166 and 167.

Law if an actual purchase or sale of securities, whether of Grason or some other entity, occurred in connection with the deposits of fraudulently endorsed checks involving plaintiffs Brad Michael Kahn, Brendan Adam Kahn and Alex Kahn. Fed.R.Civ.P. 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Accordingly, the portion of the Complaint in which Jan & Craig's Window Factory, Brad Michael Kahn, Brendan Adam Kahn and Alex Kahn allege a § 10(b) violation by Chase is dismissed without prejudice, and those plaintiffs are given leave to replead in conformance with the requirements of Rule 9(b). In all other respects, Chase's motion to dismiss the claim under the Securities Exchange Act of 1934 is denied.

### Berg, Matthias, and Matthias & Berg

■ Defendants Berg, Matthias and Matthias & Berg (collectively M & B) move to dismiss plaintiffs' RICO, Securities Act and common law claims. As an initial matter, M & B notes that plaintiff Roselyn Kahn lacks standing to sue because her loss occurred prior to M & B's involvement with plaintiffs. This fact, which is not contradicted by the Complaint and is unrebutted in plaintiffs' Memorandum of Law, severs any causal link between M & B and Roselyn Kahn's loss, and her claims against defendants Berg, Matthias and Matthias & Berg are therefore dismissed.

■ M & B moves also to dismiss plaintiffs' claims under § 10(b) of the Securities Exchange Act of 1934. Their principal argument in this regard is that "[n]one of M & B's alleged conduct 'caused' the purchase or sale of a security so as to make out a claim under section 10b–5." M & B's Memorandum of Law at 11. While this argument may address M & B's liability as direct perpetrators of a § 10(b) violation, plaintiffs charge M & B with aider and abettor liability as well, the requirements for which are set out in *Armstrong v. McAlpin, supra.* M & B's response to the charge of aiding and abetting is simply that its retainer and waiver letters "cannot constitute the rendition of 'substantial assistance' by M & B in the achievement of

Black's thefts," M & B's Memorandum of Law at 17, because those letters gave plaintiffs notice of the prior relationship the lawyers had with defendants. Plaintiffs' Complaint, however, charges that the waivers were fraudulent in failing to disclose the *extent* of the relationship between M & B and defendants, among other things, and adequately pleads "substantial assistance" as required by *Armstrong.* The Complaint's allegations of fraud against M & B, coupled with the more specific factual allegations about M & B's conduct, also satisfy the Fed.R.Civ.P. 9(b) requirement that fraud be pled with particularity, as set forth in *IIT, An Int'l Inv. Trust, supra.*

M & B moves also to dismiss plaintiffs' RICO claims. This portion of the motion is predicated virtually entirely upon M & B's argument that the Section 10(b) claim should be dismissed. ("Because M & B's alleged predicate acts are not actionable under § 10b–5, they cannot support plaintiffs' claims under RICO." M & B's Memorandum of Law at 20) For the reasons stated above plaintiffs' claims under § 10(b) are adequately pled, and M & B's motion to dismiss the RICO claims is denied.

M & B moves finally to dismiss plaintiffs' claims based on legal malpractice and common law constructive fraud. M & B argues that both claims require a showing of a fiduciary relationship between M & B and each plaintiff, the only attorney-client relationship having been one between M & B and Jan and Craig's Window Factory. But in addition to the attorney-client relationship with the Window Factory, the Complaint adequately pleads an attorney-client relationship with Jan Kahn and Craig Kahn as individual plaintiffs. *See Rosman v. Shapiro*, 653 F.Supp. 1441, 1445 (S.D.N.Y.1987) ("[W]here, as here, the corporation is a close corporation consisting of only two shareholders with equal interests in the corporation, it is indeed reasonable for each shareholder to believe that the corporate counsel is in effect his own individual attorney.") This analysis may apply equally to Jan Kahn and Craig Kahn in their statuses as trustees of the Four Seasons Manufac-

turing Co., Inc. Pension Trust and as custodians for Brad Michael Kahn, Brendan Adam Kahn, and Alex Kahn, and their legal malpractice and common law constructive fraud claims cannot be dismissed at this early stage prior to the discovery of additional facts regarding M & B's relationships with the plaintiffs. M & B's motion to dismiss the legal malpractice and common law constructive fraud claims is therefore denied.

The claims against Gruntal & Company are dismissed in their entirety. The claim under RICO against Chase Manhattan Bank is dismissed, and the claims under Section 10(b) of the Securities Exchange Act of 1934 of Jan & Craig's Window Factory, Brad Michael Kahn, Brendan Adam Kahn, and Alex Kahn are dismissed without prejudice, and those plaintiffs are given leave to replead, within 30 days of the date of this order, in conformance with the requirements of Fed.R.Civ.P. 9(b). As to defendants Berg, Matthias, and Matthias & Berg, the claims of Roselyn Kahn are dismissed.

SO ORDERED.