**LARO, INC., derivatively on behalf of Bay Property Associates, Plaintiff,**

v.

**The CHASE MANHATTAN BANK, (NATIONAL ASSOCIATION), Jonathan Eichner, Eichner Development Corp., Overland Construction Corp., Delcor Construction Corp., Ort, Inc., KRM Construction Inc., Rose Hill Associates, Sidney M. Johnson and Associates, and Sidney M. Johnson, Defendants.**

No. 92 Civ. 3277(MEL).

United States District Court, S.D. New York.

Oct. 21, 1994.

Silverman, Collura & Chernis, P.C., New York City (Ronald A. Balzano, Michelle J. Cohn, of counsel), for plaintiff.

Dewey Ballantine, New York City (Jack Kaufman, Randall M. Fox, of counsel), for defendant Chase Manhattan Bank N.A.

LASKER, District Judge.

During the years 1987–1990, Chase Manhattan Bank advanced money to be used as a construction fund by Bay Property Associates ("BPA"), a partnership created in 1984 for the purpose of owning and developing a specific parcel of land in Brooklyn, New York. Laro, Inc. ("Laro"), a 50.01% limited partner in BPA, brings suit on behalf of BPA, claiming that Chase advanced these funds to BPA's general partner, Jonathan Eichner, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, subsections (c) and (d). Laro also alleges state law claims, including aiding and abetting of fraud and gross negligence. See Complaint, ¶ 30–32. Chase moves for summary judgment dismissing the complaint, contending that, under the Supreme Court's decision in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), Laro has not submitted evidence permitting a reasonable inference of fraudulent intent. The motion is granted.

I

Laro's principal allegations are that Chase violated RICO by participating, with Jonathan Eichner and various Eichner-controlled entities, in a scheme to defraud BPA by (1) funding the construction of BPA property development and advancing funds to Eichner in disregard of prudent and accepted lending procedures, despite Laro's warnings that Eichner was fraudulently misappropriating loan proceeds, (2) diverting $500,000 of the BPA loan proceeds for the personal benefit of Eichner, and (3) creating a lien on the BPA property in favor of a partnership controlled by Eichner.

In 1983, Laro, Inc. (then known as "Wescon Realty Inc.") purchased a 22–acre tract of unimproved waterfront property from Bankers Trust Company ("Bankers Trust")

for a price of $1,500,000. In September 1984, Wescon and Jonathan Eichner formed Bay Property Associates (BPA), a limited partnership of which Jonathan Eichner was the sole general partner. Wescon contributed to BPA the property acquired from Bankers Trust in 1983, receiving in exchange a 50.01% interest in the partnership. Sometime after the formation of BPA, Wescon changed its name to Laro, Inc.

In 1986, Laro Realty Corp., an entity which Laro claims is indistinguishable from Laro Inc., commenced an action in New York State Court, unrelated to the case at bar, seeking the dissolution of the BPA partnership on the grounds that Eichner, as general partner, had breached his fiduciary and contractual obligations to BPA. This dispute remains unresolved.

In 1987, Chase approved a construction loan of $14,600,000 to BPA for "Phase One" construction on the BPA property.[1] Disbursements of the Chase loan, the first of which was made at the loan closing on October 1, 1987, continued through mid–1990, when development of the BPA property was abandoned. Funds were advanced to Eichner, in his capacity as BPA's general partner, through a requisition process that required BPA to submit forms to Chase detailing project costs.

Laro asserts that, motivated by an "aggressive mode for doing business," and a desire to continue its favorable business relationship with BPA's general partner Jonathan Eichner, Chase assisted Eichner at the expense of the BPA partnership through acts of fraud, described below, accomplished in part through the use of interstate mail and wire. In addition, Laro argues that the fact that a number of Chase Bank's loan officers purchased apartments in separate property developed by Mr. Eichner suggests additional motivation on the part of Chase Bank to defraud BPA, and that these personal investments subject Chase to liability on a respondeat superior theory.

---

1. Phase One of the construction was to include two four-story elevator buildings, an 82–boat marina with a fishing pier, a pool, a clubhouse, and a 90–space garage. See Silverman Aff. Ex. 15 at C–001026.

Laro alleges, first, that by advancing construction funds to Eichner with knowledge of the dissolution action and in the face of "warning signals" that Eichner was misappropriating loan funds, Chase "ignored material information that should have impeded its casual lending relationship with Eichner." Laro asserts that, to the detriment of BPA, Chase knowingly honored inflated requests for loan funds, many of which were to pay for work allegedly performed by Eichner-controlled entities.

Second, Laro alleges that Chase fraudulently repaid itself, from partnership funds, over $500,000 that was owed Chase by Eichner personally. As explained by a memorandum written by a Chase loan officer, this money had been borrowed from Chase by Mr. Eichner in order to "pay down" the Banker's Trust note that financed the property owned by BPA. Silverman Aff. Ex. 15 at C–001030. Laro disputes that Eichner made a payment in this amount to Bankers, arguing "[h]ad Eichner applied his Chase credit line to pay down the Bankers Trust mortgage note, no more than $261,034 could have been used for that purpose since that was the total paid to Bankers Trust in the applicable period."

Third, Laro claims that Chase improperly helped to create a lien on the BPA property in favor of Rose Hill Associates, an Eichner-controlled partnership. Although it is undisputed that the lien was a component of a mortgage-spreading device used to enable BPA to avoid costly mortgage-recording fees, plaintiff maintains that the structure of the agreement at issue favored Rose Hill to an extent not commonly found in such agreements.

The Chase loan to BPA matured on August 1, 1990. Later that month, Chase commenced an action to foreclose upon the BPA property. The foreclosure action was pending at the time the present action was commenced. At the time the foreclosure action was begun, Chase records showed that the bank had advanced more than $18,600,000 to BPA for construction of the Brooklyn property. At the July 30, 1992 foreclosure sale, Chase—the only bidder—purchased the BPA property for $3,500,000. In 1994, Chase sold the property for $1,650,000. The total loss to Chase on the construction loan, including over $4,000,000 in interest due, appears to have been about $21,000,000.

## II

Laro brought this action in 1992, asserting claims against Chase Bank, Jonathan Eichner and several entities under his control, and two parties which provided engineering services to the BPA project. Claims against the latter two have been withdrawn with prejudice. Default judgments have been entered against Jonathan Eichner and the related entities, all of whom are presently moving to vacate the defaults.

Based on the allegations detailed above, Laro asserts two civil RICO claims and two state law claims against Chase.[2] In Claim Nine of the complaint, Laro alleges that Chase and Eichner engaged in numerous acts of mail and wire fraud, all of which were part of "said defendants' scheme to defraud BPA by creating illegal liens upon its property, by concealing the Laro action and by recklessly funding the Chase loan in a manner designed to enable Eichner to convert the proceeds of such loan," in violation of 18 U.S.C. § 1962(c). Complaint, ¶ 116–118. In Claim Ten, Laro alleges that Chase and Eichner conspired to violate 18 U.S.C. § 1962(a) and (c), in violation of 18 U.S.C. § 1962(d). As relief for the alleged RICO violations, Laro seeks damages in the amount of $19,642,500, trebled, as well as attorneys' fees.

## III

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All justifiable inferences and ambiguities must be drawn or resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

---

**2.** In Claims Seven and Eight of the complaint, Laro asserts claims of gross negligence and aiding and abetting Eichner in the commission of fraud. Complaint, ¶ 108–114.

U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 596, 106 S.Ct. at 1361.

## A. Plaintiff's RICO Claims

The question presented is whether, on the extensive record before us, a reasonable juror could conclude that Chase violated RICO on the basis of the alleged predicate acts of mail and wire fraud. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As indicated above, Laro alleges that Chase participated in a scheme to defraud BPA by knowingly advancing construction loan funds to Eichner in a manner permitting him to divert the funds from the property development for which they had been allocated.

Chase contends that it is entitled to summary judgment primarily under the ruling of *Matsushita*, in which the Court held that "the absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(e)." 475 U.S. at 596, 106 S.Ct. at 1361.

More specifically, Chase argues that Laro's theory that Chase fraudulently advanced funds to Eichner at the expense of BPA makes no economic sense because "Chase had no conceivable reason to undermine its own collateral and enrich Mr. Eichner in a transaction that ultimately cost Chase $21,000,000."

In *Matsushita*, the Supreme Court reviewed a summary judgment motion made by defendants charged with violating the Sherman Act by conspiring to engage in predatory pricing. There, the Court held that lack of motive to engage in the conduct alleged bears upon the range of permissible conclusions that might be drawn from ambiguous evidence. Specifically, the Court wrote, "if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." 475 U.S. at 596–97, 106 S.Ct. at 1361. The Court found that the predatory pricing scheme alleged in *Matsushita* made "no practical sense: it calls for petitioners to destroy companies larger and better established than themselves, a goal that remains far distant more than two decades after the conspiracy's birth. Even had they succeeded in obtaining their monopoly, there is nothing in the record to suggest that they could recover the losses they would need to sustain along the way." 475 U.S. at 597, 106 S.Ct. at 1361. Under these circumstances, the Court found, the conduct alleged was insufficient to create a genuine issue for trial.

■ To prevail on a § 1962(c) civil RICO claim, a plaintiff must prove a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496; 105 S.Ct. 3275, 3285; 87 L.Ed.2d 346 (1985). A pattern of racketeering activity requires the commission of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1). *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 231–33, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989). Here, Laro alleges that mail and wire fraud are the predicate acts supporting its RICO claims. See Complaint, ¶ 116–117. Accordingly, Chase's motion for summary judgment requires a determination whether, with respect to Laro's allegations of fraud, there is a genuine issue of material fact, as measured by the *Matsushita* criterion. *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F.Supp. 411, 424 (S.D.N.Y.1992).

■ The offenses of mail and wire fraud each require proof of the same two elements: that defendant (1) knowingly participated in a scheme to defraud; and (2) knowingly used the mails—or wires—to further the scheme.

*Compania Sud–Americana de Vapores,* 785 F.Supp. 411. *See also O'Malley v. New York City Transit Authority,* 896 F.2d 704 (2d Cir.1990).

■ A showing of intentional fraud or reckless indifference to the truth is necessary to establish mail or wire fraud. *O'Malley,* 896 F.2d at 706. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir. 1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (en banc); *Drexel Burnham Lambert v. Saxony Heights Realty,* 777 F.Supp. 228, 238 (S.D.N.Y.1991) "The term 'scheme to defraud' connotes some degree of planning by the perpetrators, making it essential that the evidence show the defendants entertained an intent to defraud." (quoting *Soper v. Simmons Int'l, Ltd.,* 632 F.Supp. 244, 250 (S.D.N.Y.1986)).

■ An inference of scienter may be established either by "facts showing a motive for committing fraud and a clear opportunity for doing so," or where a motive is not apparent, by "identifying circumstances indicating conscious behavior by the defendant ..., though the strength of the circumstantial allegations must be correspondingly greater." *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d at 50 (dismissing RICO claim where plaintiff failed to provide facts from which an inference of motive could be drawn); *Atlantic Gypsum Co. v. Lloyds Intern. Corp.,* 753 F.Supp. 505 (S.D.N.Y.1990); *White v. Beer,* 679 F.Supp. 207 (E.D.N.Y. 1988). Although decided in the context of an antitrust dispute, the Supreme Court's ruling in *Matsushita* has been found instructive by courts asked to infer fraudulent schemes that are economically irrational. In *Atlantic Gypsum Co. v. Lloyds International Corp.,* 753 F.Supp. 505 (S.D.N.Y.1990), for example, Judge Mukasey found that where a scheme alleged by plaintiffs "defied logic," plaintiffs' view of the facts did not "yield a reasonable inference of fraudulent intent." *Id.* at 514 (dismissing plaintiffs claims pursuant to Fed. R.Civ.P. 12(b) and 9(b)).

In *Atlantic Gypsum,* plaintiffs, alleging civil RICO claims predicated on mail and wire fraud, claimed that defendants, established banking institutions, advanced money to plaintiffs for a construction project and then intentionally prevented them from completing the venture. The motive alleged for this behavior was to gain control of the plaintiff corporation and to "strip AGC and its owners of valuable assets." *Id.* at 514. Judge Mukasey summarized the proposed scheme:

> Thus, on plaintiffs' view of the facts, defendants advanced money to the venture with the intention of driving it into the ground so that they could control the failed venture and then wait in line with other creditors in a bankruptcy proceeding.

*Id.* at 514. The facts of *Atlantic Gypsum* bear a remarkable resemblance to the facts of the case at bar. Laro alleges that Chase, in an effort to cultivate a favorable banking relationship with Jonathan Eichner, fraudulently advanced BPA construction funds to Eichner in a way designed to enable him to divert the funds from the partnership's purpose, namely, the improvement of the property that served as Chase's collateral for the loan.

■ While summary judgment is ordinarily inappropriate where intent is at issue, *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460 (2d Cir.1989), a plaintiff "is not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988). Even where a defendant's intent is at issue, summary judgment will be granted unless concrete evidence is offered that would permit a reasonable juror to return a verdict in plaintiff's favor. *Id.* Here, the extensive evidence offered by Laro, like the scheme alleged in *Atlantic Gypsum,* does not yield a reasonable inference of fraudulent intent. Laro asserts that Chase's intent to defraud is evident from its relationship with Jonathan Eichner and from its handling of the BPA loan. However, assuming the truth of the specific acts cited by Laro to bolster its assertion of fraudulent intent, including Chase's concealment of the true state of its knowledge of the Laro dissolution action, its affinity for Eichner, and its aggressive business stance, the facts unearthed by the ex-

tensive discovery process that has created the record before the Court does not permit a reasonable inference that Chase knowingly risked over fourteen million dollars in order to permit Eichner to defraud his partners by converting loan proceeds. *See also Drexel Burnham Lambert v. Saxony Heights Realty,* 777 F.Supp. 228, 239 (S.D.N.Y.1991) (citing *Atlantic Gypsum* and *Matsushita* for the proposition that where plaintiff alleges an "economically unreasonable" scheme in support of mail and wire fraud claims, the Court cannot reasonably infer fraudulent motive); *Cf. Chase Manhattan Bank v. Malatesta,* 1990 WL 96748 at \*12, U.S.Dist. LEXIS 9222 at \*42 (S.D.N.Y.1990) (Roberts., M.J.) (denying civil RICO defendant's motion for summary judgment where there was "ample evidence from which a rational trier of fact could find that the defendant acted with guilty knowledge.").

■ As noted above, the evidence of record simply does not support the claim of guilty knowledge or intentionally fraudulent behavior by Chase; such evidence as the plaintiff has pieced together to buttress its theory is outweighed by the reasonable inference that Chase would not intentionally have acted in such a way as to cause itself losses which were enormous even for such a large financial institution: In assessing fraudulent intent, it must be assumed that "the defendant is acting in his or her informed economic self-interest." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2d Cir.1994). In the absence of a reasonable inference of fraudulent intent, Laro's mail and wire fraud claims cannot withstand defendant's motion for summary judgment.

Accordingly, Laro's RICO claim against Chase made pursuant to 18 U.S.C. § 1962(c) is dismissed.

■ Laro's conspiracy claim is undermined by the same lack of genuine issue of material fact with respect to Chase's intent. Section 1962(d) forbids conspiracy to violate any other section of 18 U.S.C. § 1962. The economic irrationality of the scheme alleged

by plaintiff precludes a reasonable inference of intent to agree to commit fraud. Again, *Matsushita* is instructive. In *Matsushita,* the Supreme Court found that where defendants' behavior was consistent with other "equally plausible explanations," no inference of conspiracy arose. Certainly Laro has offered no evidence that "tends to exclude the possibility" that defendants acted independently, as required by *Matsushita* in order to survive a motion for summary judgment. *Id.* 475 U.S. at 597, 106 S.Ct. at 1361–62. In the absence of any motive to conspire, the acts alleged by plaintiff do not suffice to create a genuine issue of material fact with respect to the agreement that must be demonstrated in order to prevail on a conspiracy claim, and plaintiff's conspiracy claim must fail.

B. Aiding and Abetting

■ Similarly, plaintiff's claim that Chase violated RICO by aiding and abetting fraud perpetrated by Jonathan Eichner cannot survive Chase's summary judgment motion. Laro argues that even if it is determined that Chase did not directly or indirectly participate in the scheme to defraud, Chase is still liable for aiding and abetting the acts of mail and wire fraud in furtherance of the scheme. However, as in the case of the alleged violations of 1962(c) and (d), the illogicality of the scheme alleged by plaintiff precludes a reasonable inference that Chase acted in furtherance of such a scheme.

■ Criminal liability for aiding and abetting the violation of a provision of the federal RICO statute is provided for by 18 U.S.C. § 2. To demonstrate liability for a substantive crime as an aider and abettor, plaintiffs must demonstrate that the 'defendant consciously assisted the commission of the specific crime in some active way'. *Laterza v. American Broadcasting Co.,* 581 F.Supp. 408, 412 (S.D.N.Y.1984). Assuming applicability of this standard in the civil RICO context, Laro must show that Chase consciously assisted Eichner's effort to defraud BPA. *Id.*[3] For reasons already dis-

---

**3.** In *Petro–Tech Inc. v. Western Co. of North America,* the Third Circuit found a common-law articulation of aiding and abetting appropriate in

determining civil aiding and abetting liability under RICO: "The Restatement (Second) of Torts § 876(b) holds that liability 'for harm resulting to

cussed, the facts of record do not permit a reasonable inference of conscious assistance by Chase. Accordingly, with respect to plaintiff's aiding and abetting claim, summary judgment is granted to defendant.

In its further defense, Chase suggests, relying on the Supreme Court's recent holding in *Central Bank v. First Interstate Bank*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), that a proper construction of the RICO statute bars a civil claim for aiding and abetting liability. However intriguing the idea, a resolution of this question is not required here, as Chase is not liable for aiding and abetting fraud for the reasons that preclude its liability as a principal.

## C. Respondeat Superior

■ Finally, Laro claims that the doctrine of respondeat superior imposes liability upon Chase for the acts of its loan officers. This claim, although not separately pleaded in the complaint, apparently springs from the fact that loan officers employed by Chase Bank purchased, for investment purposes, property being developed by Jonathan Eichner. The property in question was not part of the parcel being developed by BPA, but was part of a development managed by Rose Hill, an Eichner entity and a defendant in this action. Plaintiff states (at 82):

> Two members of the Chase lending team, having made substantial investments in cooperative apartments at the Rose Hill development, had a vested interest in keeping Eichner liquid. If Eichner found himself unable to maintain the carrying charges on [the Rose Hill property], the cooperative and the owners of the coopera-

tive apartments had a substantial downside.

While these facts contribute nothing to an understanding of why Chase Bank might have defrauded BPA or been motivated to do so, they do suggest a possible motivation on the part of Chase loan officers.[4] However, whatever the motives of the loan officers, Chase is not liable for their acts.

As Judge Goettel noted, "[T]he notion that a corporation should be vicariously responsible under RICO for the independent fraudulent acts of one of its employees is a rather startling one. By its plain terms, RICO only imposes liability on corporations that *benefit* from racketeering activity (emphasis supplied). Indeed, the initial intent of the statute was to *protect* corporations from criminal infiltration (emphasis in original), not to make them the responsible parties." *Banque Worms v. Luis A. Duque Pena E Hijos, Ltda.*, 652 F.Supp. 770, 772 (S.D.N.Y.1986).

To support its respondeat superior claim, Laro cites *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434 (E.D.N.Y.1987), a civil RICO case in which the Court held that "vicarious liability *in this factual setting* is appropriate, notwithstanding the split of authority on the subject." *Id.* at 453 (emphasis supplied). However, the *Connors* Court found that the employer plaintiff sought to hold liable vicariously had benefitted from the RICO violations at issue. Indeed, the *Connors* Court observed that in *Petro–Tech Inc. v. Western Co. of North America*, 824 F.2d 1349 (1987), the Third Circuit suggested that vicarious liability in the civil RICO context may be appropriate where the employer to be held

---

a third person' from the tortious conduct of another ... [can be imposed upon a party who] ... knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." 824 F.2d 1349, 1357 (1987). This standard, like the one articulated by 18 U.S.C. § 2, appears to require conscious assistance. Moreover, in *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485 (1986), the Fifth Circuit noted, "[t]o establish that [defendant] violated the mail fraud statute as an aider and abettor, [plaintiff] must have proved that [defendant] was associated with the [fraudulent] mailing ...., participated in it as something that he wished to bring about, and sought by his actions

to make it succeed.... To prove [defendant's] association with the [fraudulent] mailing, there must be evidence that [defendant] shared in the criminal intent of the principals."

4. Chase responds with assertions that the loan officers who invested in the Rose Hill property were not active on the BPA account from the time of their investments forward, and thus could not have engaged in the alleged mail and wire fraud. For the purposes of this summary judgment motion however, the conflict is resolved in favor of the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

liable "actually benefitted" from the performance of the predicate acts. The *Connors* Court commented, "[t]hat observation is apposite here." *Connors,* 666 F.Supp. at 453.

Laro also relies on *Gruber v. Prudential–Bache Securities, Inc.,* 679 F.Supp. 165 (D.Conn.1987), in which Judge Cabranes found that, under some circumstances, the imposition of vicarious liability is appropriate in the context of a civil RICO claim. Judge Cabranes limited the applicability of his finding, however, to cases where "the corporation may fairly be said to be a 'central figure' (or 'aggressor') in the alleged scheme:

> What constitutes a 'central figure' will vary with the factual circumstances of each case. In order to establish corporate liability under Section 1962(c), however, it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity.... [t]he court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity."

*Id.* at 181. While these cases suggest that a defendant may be found vicariously liable for civil RICO violations in some situations, they also make clear that such a finding is not appropriate under the facts of this case.

▪ Laro's respondeat superior argument rests on its allegations that Chase's loan officers committed the predicate acts of mail and wire fraud to advance their personal interests by protecting their individual investments in property controlled by Jonathan Eichner. Nowhere in Laro's voluminous submissions, however, is there evidence that Chase was motivated to aid its employees in such a scheme. Indeed, even if the loan officers' acts were improperly motivated—of which there is no evidence—Chase was a *victim* of those actions, which, as plaintiff itself contends, resulted in a diversion of construction funds from the property that secured the Chase loan. Moreover, Laro has

shown no benefit to Chase as a result of its loan officers' actions. Since Chase was neither a 'central figure' in nor a beneficiary of the alleged fraud, plaintiffs respondeat superior argument fails. *See also Kahn v. Chase Manhattan Bank, N.A.,* 760 F.Supp. 369, 373 (S.D.N.Y.1991) (finding that "the independent acts of an employee not acting in his employer's interest are not a sufficient basis to hold the employer liable under RICO").

The conclusion that Chase may not be held vicariously liable for the acts of its loan officers under 18 U.S.C. § 1962(c) applies with equal force to Laro's allegation of conspiracy to violate RICO in violation of § 1962(d). *See Gruber v. Prudential–Bache Securities, Inc.,* 679 F.Supp. 165, 179 n. 25 (D.Conn. 1987).

In sum, plaintiff's RICO claims are dismissed. The state law claims are also dismissed. As the Court of Appeals pointed out, absent exceptional circumstances, a federal court should abstain from exercising pendent jurisdiction when the federal claims in a case are disposed of by summary judgment. *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986). No such exceptional circumstances exist in this case.

\* \* \*

Chase's motion for summary judgment is granted. The complaint is dismissed as to Chase.

It is so ordered.