**Charles BURKE, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 136, Docket 90–4042.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1990.
Decided April 4, 1991.

Charles Burke, East Hartford, Conn., pro se.

Shirley D. Peterson, Asst. Atty. Gen., Dept. of Justice, Washington, D.C. (Gary R. Allen, Charles E. Brookhart, Rosemary Schrauth, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before PRATT, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner-appellant Charles Burke appeals from a decision of the United States Tax Court, Charles E. Clapp, II, *Judge,* rendered in accordance with an opinion reported at 58 T.C.M. (CCH) 1022 (1989) that affirmed a deficiency and additions to tax assessed by respondent-appellee Commissioner of Internal Revenue (the "Commissioner") against Burke for the calendar year 1984, and also awarded $5,000 damages to the Commissioner against Burke pursuant to 26 U.S.C. § 6673 [1] for filing a frivolous suit. The Commissioner had determined that Burke failed to report $34,-426 in income for 1984 and improperly claimed $4,875 in deductions for charitable contributions, resulting in an income tax deficiency of $10,785. The Commissioner had also assessed against Burke a twenty-five percent ($2,696.25) addition to tax pursuant to 26 U.S.C. § 6661 for substantially understating his income, together with a five percent ($539.25) addition pursuant to 26 U.S.C. § 6653(a)(1) and additional interest (in the amount of fifty percent of the interest due on $10,785) pursuant to 26 U.S.C. § 6653(a)(2) for negligence or intentional disregard of rules or regulations.

We conclude that although the Tax Court ruling was generally correct, it somewhat overstated Burke's 1984 income, and we therefore vacate and remand the deficiency and related additions to tax. We affirm the award of $5,000 in damages pursuant to 26 U.S.C. § 6673.

### Background

Burke is an ordained minister of the Universal Life Church, Inc. ("ULC"). Both Burke and ULC have a history of disputes with the Internal Revenue Service.[2] This case involves primarily the Commissioner's determination that Burke failed to report income that he received from the rental of rooming houses in East Hartford, Connecticut during 1984. Burke claimed to have

---

1. Statutory references herein are to the Internal Revenue Code of 1954 (26 U.S.C.) as amended and in effect during 1984. The Code has since been redesignated as the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 2, 100 Stat. 2085, 2095.

2. As to Burke, *see Burke v. United States,* 61 A.F.T.R.2d (P–H) 1027, 1988 WL 68048 (D.Conn. 1988). As to the ULC, *see, e.g., Universal Life Church, Inc. v. United States,* 13 Cl.Ct. 567 (1987), *aff'd mem.,* 862 F.2d 321 (Fed.Cir.1988); *Burwell v. Commissioner,* 89 T.C. 580 (1987).

leased the rooming houses to ULC for one dollar per year in accordance with a lease executed November 30, 1983, and thereafter to have collected rents simply as an agent of ULC. Since Burke did not provide adequate records to ascertain his income, the Commissioner determined Burke's income by the "bank deposits plus cash expenditures" method; *i.e.,* the Commissioner added Burke's net deposits (the amount by which his bank accounts, in the aggregate, increased during 1984) to his cash expenditures for the year to determine his gross income. This calculation yielded a gross income of $49,030. Burke reported $14,604 as his income. The Commissioner accordingly found unreported income of $34,426. In addition, the Commissioner disallowed a $1,000 charitable contribution and a charitable contribution carryover from a prior year of $3,875, and made an offsetting favorable adjustment to allow Burke the zero bracket amount of $2,300 as a deduction in accordance with 26 U.S.C. § 63(d). The ensuing calculations resulted in a deficiency of $10,785, to which the statutory additions hereinabove described were appended.

During 1984, Burke apparently maintained at least seven bank accounts: (1) an account in the name of ULC at the Connecticut Bank and Trust Company of Hartford, Connecticut ("CBT"); accounts in the name of Christian American Brothers at (2) Connecticut National Bank of Hartford, Connecticut, (3) Liberty [3] Bank for Savings, and (4) City Savings Bank; and accounts in Burke's own name at (5) Colonial Bank of Hartford, Connecticut, (6) First Federal Savings and Loan Association of East Hartford, Connecticut ("First Federal"), and (7) South Windsor Bank and Trust Company ("South Windsor").

In addition to claiming that the rental income from the boarding houses is not taxable to him, Burke also contends that various of the bank deposits that the Commissioner treated as taxable income were in fact gifts from his parents, repayment of a loan, and previously taxed income which he had transferred from other bank accounts into First Federal.

## Discussion

Taxpayers bear the burden of disproving a deficiency determined by the Commissioner, *Silverman v. Commissioner,* 538 F.2d 927, 930 (2d Cir.1976), and this court will uphold Tax Court findings sustaining a determination by the Commissioner unless they are clearly erroneous. *DeMartino v. Commissioner,* 862 F.2d 400, 406 (2d Cir.1988).

The Commissioner redetermined Burke's 1984 income by the "bank deposit plus cash expenditures" method. This method has received judicial recognition, *see Marcello v. Commissioner,* 380 F.2d 494, 496–97 & n. 4 (5th Cir.1967); *Estate of Mary Mason v. Commissioner,* 64 T.C. 651, 656–57 (1975) (bank deposits method), *aff'd on opinion below,* 566 F.2d 2 (6th Cir.1977); *John Harper v. Commissioner,* 54 T.C. 1121, 1128–29 (1970), and has been described as follows:

> Deposits and cash expenditures are totaled, unless the cash was derived from withdrawals from the bank. Subtracted from this total are proceeds of loans, redeposits and identifiable non-income. The remainder is taxable income, unless shown to be otherwise. The income calculated by this method is compared with the amount noted on the tax return and any excess is considered an understatement of income.

*Marcello,* 380 F.2d at 497 n. 4; *contrast Teichner v. Commissioner,* 453 F.2d 944, 945–49 (2d Cir.1972) (bank deposits determined to be nonincome fruits of check kiting scheme).

We are persuaded that, for the most part, the Commissioner correctly applied this method to determine Burke's 1984 income. Because of one error that resulted in an overstatement of Burke's 1984 income, however, we vacate the deficiency and additions imposed by the Tax Court and remand for their redetermination. We affirm the $5,000 damage award against Burke pursuant to 26 U.S.C. § 6673.

---

**3.** Burke refers to this bank as the "Hartford    National Bank."

We turn now to Burke's particular challenges to the rulings of the Tax Court.

## A. *Rental Income Deposited at CBT.*

Burke states that $15,477.94 deposited at CBT was not income to him. The parties agree that those deposits represent the rent paid to Burke from rooming houses on three properties he owned. Burke contends that we should attribute those rents to ULC because Burke leased the properties to ULC (for a total of one dollar per year), and therefore the rents were paid by *sub* tenants to the tenant, ULC. Burke introduced a purported lease executed by him and ULC, and a ULC corporate resolution authorizing Burke to open bank accounts in the name of ULC.

"Federal tax law is concerned with the economic substance of the transaction under scrutiny and not the form by which it is masked." *United States v. Heller,* 866 F.2d 1336, 1341 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989); *accord, Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945) (courts must not "permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities"). The Tax Court correctly looked to the substance of the transaction in this case and found the purported lease "meaningless" and a "sham".

■ Burke managed, maintained, and repaired the rental properties, dealt with tenants and local officials, and kept permits to operate the rooming houses in his own name. Burke collected the rent money and deposited it in an account over which he had signatory power. Further, in two contemporaneous civil litigations brought by Burke against the City of East Hartford and various agents or employees of the City alleging unconstitutional interferences with his civil rights, Burke alleged that: (1) the defendants undertook "to prevent [Burke] from conducting his lawful business as a rooming house owner;" (2) Burke "lost income from his employment as an owner and manager of a rooming house;" and (3) Burke was "the owner of [one of the leased] rooming house[s] and has a written innkeeper, guest contract with all the occupants of the structure stating the innkeeper is in complete control of the dwelling unit." In view of the foregoing, the Tax Court was amply justified in regarding Burke's dollar-a-year lease to ULC as without economic substance, and certainly committed no clear error in so concluding. *Cf. Mone v. Commissioner,* 774 F.2d 570, 573–74 (2d Cir.1985) (rejecting taxpayers' claims that their wages were not taxable to them because they had been assigned to a religious organization that they served as ministers).

■ Burke also contends that the rental receipts which he deposited into the CBT account were "used to do the work and worship of" ULC or were forwarded to a ULC account in California over which Burke had no control. Subsequent use of the rental income for the "work and worship" of ULC would not prevent it from being taxable upon receipt, but would arguably entitle Burke to claim a charitable contribution. Burke has stipulated, however, that he is not entitled to any charitable contribution deduction for 1984.[4] As to the subsequent transfer of some of the funds to ULC, a taxpayer may not transfer the obligation to pay tax on income he earns merely by assigning it to another who actually receives the income. *Helvering v. Horst,* 311 U.S. 112, 116–117, 61 S.Ct. 144, 146–147, 85 L.Ed. 75 (1940); *see also Mone,* 774 F.2d at 573–74. *A fortiori,* a taxpayer in Burke's position, who himself receives income and subsequently forwards it to a third party, cannot thereby escape taxation on the prior receipt.

## B. *Other Bank Deposits.*

As stated earlier, in calculating income from bank deposits and cash expenditures, there must be subtracted from the total of deposits and expenditures "proceeds of loans, redeposits and identifiable non-in-

---

4. This stipulation constitutes an acquiescence by Burke in the second error asserted by the Commissioner regarding Burke's 1984 income tax return.

come." *Marcello,* 380 F.2d at 497 n. 4; *see also Estate of Mary Mason,* 64 T.C. at 660 (excluding from income bank deposits that "constituted mere transfers from one account to another").

In addition to his claim regarding rental income deposited at CBT, Burke challenges various deposits at First Federal as not properly constituting income. In considering these contentions, we note that the Internal Revenue Service ("IRS") auditor who investigated Burke's 1984 income tax return testified that he never examined the bank accounts maintained by Burke in the name of Christian American Brothers at Liberty Bank for Savings or City Savings Bank, or in his own name at South Windsor Bank and Trust Company. This is not surprising, since the bank accounts maintained by Burke (both personally and on behalf of ULC and Christian American Brothers) were a subject of stipulation between Burke and the Commissioner, and no mention was made of these accounts in that stipulation. Similarly, the Tax Court made explicit findings concerning the bank accounts over which Burke had signatory powers in 1984 and did not allude to these accounts, although some exhibits were apparently introduced in evidence regarding them.

We reiterate in this context our earlier observation that Burke bears the burden of disproving the deficiency assessed against him, *see Silverman,* 538 F.2d at 930, and that we review the Tax Court's findings in favor of the Commissioner only for clear error, *see DeMartino,* 862 F.2d at 406. We now turn to Burke's specific claims of error.

1. Transfers from South Windsor Account to First Federal Account.

Burke contends that various transfers were made from the South Windsor account to the First Federal account which represented taxable income from prior years when initially deposited in the South Windsor account, and therefore should not have been deemed taxable income for 1984

when transferred to the First Federal account. Burke concedes that this contention was not presented to the Tax Court. Since, as will appear, this case will be remanded for other reasons, we leave it to the discretion of the Tax Court whether this pro se litigant should be allowed to pursue this claim upon remand. Obviously, however, Burke did not carry his burden of proof on this contention; nor did the Tax Court commit clear (or any other) error with respect to it.

2. Alleged Gifts from Burke's Parents to Burke.

Burke specifically claimed that $12,000 of the deposits in the First Federal account which resulted from transfers from the South Windsor account represented gifts from his parents. The Tax Court committed no error in rejecting this contention, and refusing to credit Burke's testimony in this regard. Burke introduced only a photocopy of one side of a check, drawn by "Smithy's Used Car Sales" and dated in 1980, that did not indicate whether it had been cashed. He did not introduce any checks from his parents. No one other than Burke testified about the alleged gifts, and the letters from his parents stating that they had each given him a $6,000 gift were undated.

3. Alleged Loan Repayment.

Burke also asserts that an additional $4,000 deposited at First Federal was not income to him because it was the repayment of a loan he had made to a friend, Robert Cohen. When testifying, Burke could recall neither the original amount of the loan nor when he had made it. Burke did not offer any documentation of the loan, and no one other than Burke testified about the loan, even though Cohen was available to testify.[5] As in the case of the gift issue, the Tax Court did not credit Burke's testimony on this loan issue, and we do not find the Tax Court's ruling against Burke to be clearly erroneous.

**5.** After taking this appeal, Burke filed a "Claim for Stipulation to Include New Evidence" dated June 6, 1990 that contained, *inter alia,* an affidavit by Robert Cohen.

**4. Transfers from Christian Brothers' Accounts to First Federal.**

Burke claims that in 1983 he deposited $1,000 in each of the three Christian American Brothers accounts (*i.e.*, Connecticut National Bank of Hartford, Liberty Bank for Savings, and City Savings Bank), and that on June 18, 1984, he withdrew $900 from each of these accounts and deposited the $2,700 in the First Federal account. He contends that this income was taxable in prior years, and therefore should not be counted for 1984.

■ The opinion of the Tax Court did not address this contention, and Burke makes no claim on appeal that it was presented to the Tax Court. Further, the Tax Court's recital of Burke's active bank accounts in 1984 did not even mention two of the three Christian American Brothers accounts, following in this respect the stipulation of the parties regarding Burke's bank accounts. Under these circumstances, we cannot conclude that Burke carried his burden on this issue, or that the Tax Court committed clear error. Again, it is within the discretion of the Tax Court whether to entertain this argument on remand.

**C. *Calculation of Cash Expenditures.***

■ As stated earlier, the method of estimating Burke's 1984 income employed by the Commissioner required the addition of Burke's bank deposits and cash expenditures during that year. The cash expenditures were determined by ascertaining Burke's total expenses for the year, and then subtracting the checks drawn on the First Federal and CBT accounts. In calculating Burke's total expenses, however, the Commissioner included all of the deductions claimed on Burke's 1984 income tax return. Those deductions included a disallowed $3,875 charitable contribution carryover from a prior year. It is clear that this item should not have been included in the calculation of Burke's 1984 cash expenditures, thus requiring vacation and remand of the Tax Court's affirmance of the deficiency assessed by the Commissioner.

**D. *Imposition of Penalties pursuant to 26 U.S.C. §§ 6661 and 6653(a)(1) and (2).***

26 U.S.C. § 6661(a) requires the imposition of a twenty-five percent addition to "any underpayment" attributable to a "substantial understatement" of income tax for any taxable year. A "substantial understatement" is defined in section 6661(b)(1)(A) as one that exceeds the greater of (1) ten percent of the required income tax for the year, or (2) $5,000. Since the Commissioner assessed a deficiency of $10,785, and the tax shown on Burke's return was only $1,480, the twenty-five percent penalty is clearly applicable, and will in all probability remain so after remand, although requiring recomputation. 26 U.S.C. § 6661(c) authorizes "the Secretary" to waive all or any part of this addition on a showing by the taxpayer of reasonable cause and good faith. However, no such waiver was extended, Burke has made no argument premised upon this provision, and even if a court is authorized to impose a waiver in the absence of any action by the Secretary of the Treasury or his designee, no waiver is appropriate on this record.

■ 26 U.S.C. § 6653(a)(1) and (2) requires specified additions to a deficiency assessment "[i]f any part of the underpayment . . . is due to negligence or intentional disregard of rules or regulations." Burke's income tax returns for 1980, 1981, and 1982 were audited, primarily because of ultimately disallowed charitable contributions to ULC. Taking this into account, as well as the implausibility of Burke's divesting himself of taxable rental income by entering into a dollar-a-year lease with ULC as to properties which Burke continued to manage and control, and from which he continued to collect the rents, the section 6653(a) additions were properly imposed. *See DeMartino*, 862 F.2d at 407–08; *Neely v. United States*, 775 F.2d 1092, 1095–96 (9th Cir.1985). On remand, however, they will have to be recalculated to correspond with the revised deficiency.

**E. *Damages under Section 6673.***

■ Although we vacate the Tax Court's decision in part, we affirm its

award of damages to the United States under 26 U.S.C. § 6673, which directs the Tax Court to award such damages when the taxpayer's position is "frivolous or groundless." The circuit courts of appeal will reverse the Tax Court's assessment of damages under section 6673 only if that assessment constitutes an abuse of discretion. *Sandvall v. Commissioner,* 898 F.2d 455, 459 (5th Cir.1990); *Pollard v. Commissioner,* 816 F.2d 603, 605 (11th Cir. 1987); *see also Granado v. Commissioner,* 792 F.2d 91, 94 (7th Cir.1986) (per curiam) (affirming damages under section 6673 because taxpayer argued that wages are not income, even though taxpayer also raised an argument that was nonfrivolous), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1378, 94 L.Ed.2d 692 (1987). Citing *Granado,* we have recently ruled that sanctions can be imposed pursuant to Fed.R.App.P. 38 where, even if one issue is deemed valid, "the bulk of [appellant's] claims are completely devoid of merit." *S.R. Mercantile Corp. v. Maloney,* 909 F.2d 79, 83 (2d Cir. 1990); *see also Kawitt v. United States,* 842 F.2d 951, 954 (7th Cir.1988) (same, citing *Granado* ); *Cheek v. Doe,* 828 F.2d 395, 398 (7th Cir.) (per curiam) (same, citing *Granado* ), *cert. denied,* 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987).

In this case, in addition to the insubstantial claims previously discussed herein, Burke moved (1) to recuse Judge Clapp because "he is an employee of and on the payroll of the Defendant;" (2) for the Tax Court to "rule that it [*i.e.,* the Tax Court] is unconstitutional" and transfer the case to district court for a jury trial; and (3) for the "right to petition the government for a redress of grievances without fear of the unconstitutional assessment of up to $5,000" pursuant to section 6673. In view of the foregoing, the Tax Court was thoroughly warranted in imposing $5,000 damages under section 6673, and our correction of the deficiency assessed against Burke in one particular, on a ground which he did not raise, provides no basis to disturb the ruling of the Tax Court in this regard.

F. *Various Motions by Burke.*

When this appeal was argued, Burke made a motion, premised upon two notices that he had received from the IRS regarding the balance due on his 1984 income tax, "[t]hat the court overturn the Tax Court's decision and order [Burke's] 1040 be accepted as filed, by presentment of new evidence." We granted the motion to the limited extent of allowing the IRS notices to be added to the record on appeal. Burke also moved on February 20, 1991 for an order from this court that his 1984 return be accepted as filed because of IRS notices mailed to him after oral argument that are at odds with the IRS figures presented on his appeal. Since this case is being remanded to the Tax Court, we will leave it to that court to determine the effect of these notices. The motion is accordingly denied as moot.

### Conclusion

The decision of the Tax Court is vacated, insofar as it affirmed the deficiency and additions to tax assessed against Burke, and remanded for further proceedings not inconsistent herewith; and affirmed, insofar as it assessed damages in the amount of $5,000 against Burke pursuant to 26 U.S.C. § 6673. In view of our disposition of this appeal, we deny the Commissioner's application for damages and costs pursuant to 28 U.S.C. § 1912 (1988) and Fed.R. App.P. 38.