**UNITED STATES of America, Appellee,**

v.

**Sharon GRANT, Defendant–Appellant.**

**No. 1495, Docket 91–1647.**

United States Court of Appeals,
Second Circuit.

Argued April 22, 1992.

Final Submissions May 7, 1992.

Decided June 17, 1992.

Thomas Lumbard, Morris Plains, N.J. (Christopher Davis, Washington, D.C., of counsel), for defendant-appellant.

Karen A. Popp, Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., David C. James, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before: OAKES, Chief Judge, KEARSE and WALKER, Circuit Judges.

PER CURIAM:

Sharon Grant appeals from her conviction, following a jury trial, on charges of conspiracy to import heroin, importation of heroin, and possession of heroin with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 963. Principally, Grant asserts that the government failed to prove that the white powder found on Grant's traveling companion, Gene Kirven, was heroin. After reviewing the evidence, we disagree. Accordingly, we affirm Grant's conviction and sentence in all respects.

BACKGROUND

At trial, the government sought to prove that Grant and Kirven traveled to Africa in September 1990 and January 1991 and returned each time with heroin. Kirven pled guilty and testified for the government. The government also presented the testimony of the U.S. Customs inspectors who arrested Kirven and Grant and of a chemist who analyzed a powder that the government asserted was the substance seized from Kirven.

Kirven described in detail her two trips to Africa with Grant. In September of 1990, Grant offered Kirven $8,000 to take a trip to Africa and bring "something" back. Kirven accepted, and Grant and Kirven flew to Senegal. After several days of vacationing in Senegal, Grant and Kirven made contact with a man who provided them with two packages wrapped in brown tape. Grant taped both packages onto Kirven's body and examined her to insure that the packages were not visible when Kirven walked. Grant and Kirven then flew back to New York on September 26 and successfully cleared customs. A third woman met them at the airport and drove them to the Penta Hotel, where Kirven removed the packages and handed them to Grant, who in turn passed the packages to the third woman. After the woman left with the packages, Kirven asked Grant what was in the packages, and Grant replied that it was heroin.

Kirven also testified that in December 1990, Grant again invited her to vacation in Africa. Kirven agreed, and the two flew to Abidjan, Ivory Coast. In Abidjan, Kirven and Grant made contact with a man who provided them with two packages. Grant assisted Kirven in strapping the packages to her body, and the two flew back to New York on January 5. On the flight, Kirven asked Grant about the packages and Grant instructed her not to discuss the subject on the plane, since there might be agents within earshot.

The trip proceeded much as the successful September trip had, until the pair landed in New York and attempted to pass through customs. Customs inspectors became suspicious of Kirven, who was travelling on a recently issued passport and appeared nervous. The inspectors detained Kirven and Grant. A patdown search of Kirven revealed the two packages, and the contents field tested positive for heroin. At that point, the inspectors placed Kirven under arrest, and Kirven promptly implicated Grant. The inspectors searched Grant, but found no contraband. Nonetheless, based on Kirven's statements, the inspectors arrested Grant.

Finally, a government chemist testified that the packages contained 3007 grams of 45% pure heroin. The drugs themselves were never introduced into evidence.

The jury convicted Grant of conspiring to import heroin between September 1990 and January 1991, and of importing heroin and possessing heroin with intent to distribute it in January 1991. The jury found Grant not guilty of importing and possessing heroin in September of 1990. The district court sentenced Grant to 187 months in prison, which included a 48 month downward departure for Grant's family ties. This appeal followed.

DISCUSSION

■ On appeal, Grant contends that the government failed to prove that the packages imported by Kirven in January contained heroin. She points out that the government did not establish an airtight chain of custody over the packages from the time they were seized at the airport until the time they were tested in the laboratory by the government's chemist. Instead, the testimony and documents introduced at trial indicated that the packages were signed out of an airport vault on January 9, 1991 and not signed into the Drug Enforcement Agency's laboratory until January 23, 1991. There is nothing in the record to indicate what happened to the packages in the interim. From this lapse, Grant contends that there was insufficient evidence to establish that the laboratory tested the same substance that Kirven carried to the airport. Grant then argues that without the lab test, there was not sufficient evidence from which any reasonable jury could find that the packages contained heroin. We disagree.

We first note that this is not a typical "chain of custody" case. Chain of custody is usually an issue where a party attempts to introduce a piece of physical evidence. Then, Federal Rule of Evidence 901 requires as a condition precedent to admissibility a showing, by a preponderance of evidence, that the thing offered is what its proponent claims it to be. In other words, if the government seeks to introduce a bag of drugs into evidence, it must first estab-

lish that the bag is what the government asserts it to be—the bag found at the scene of the crime. One way to establish that fact is to show the "chain of custody" of the bag, that is, where the bag has been from the moment it was seized until the moment it is offered into evidence.

A break in the chain of custody will not necessarily lead to the exclusion of the evidence. *United States v. Howard–Arias,* 679 F.2d 363, 366 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). Rather, "the ultimate question is whether the authentication testimony [i]s sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *Id.*

In this case we need not determine whether the drugs were properly authenticated since the government did not offer the drugs themselves into evidence. Instead, the government presented the testimony of the chemist who analyzed the package. There is no need to authenticate the testimony of live witnesses.

This is not to say that the government's failure to establish a chain of custody is unimportant. In order to be admissible, the testimony of a live witness must be relevant, that is, must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. In order for the chemist's testimony to be relevant, there must be some likelihood that the substance tested by the chemist was the substance seized at the airport. The government's failure to establish a chain of custody from the moment the substance was seized to the time it was subjected to laboratory analysis makes this less likely, and thus casts some doubt on the admissibility of the chemist's testimony.

However, Grant did not object to the chemist's testimony at trial and does not assert here that the testimony should have been excluded. Even if Grant had pursued this argument, we doubt it would be successful, given the broad discretion afforded district courts in making relevancy determinations. *See Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 619–20 (2d Cir.1991); *George v. Celotex Corp.,* 914 F.2d 26, 28 (2d Cir.1990).

Instead, we understand Grant's attack on the chain of custody as going to the weight of the chemist's testimony. In essence, Grant is arguing that because of the gap in the chain of custody before the substance reached the laboratory, the chemist's testimony is not sufficiently probative as to the nature of the substance imported and that the evidence in this case, so impaired, cannot support a jury's finding that Kirven carried heroin.

In raising such a challenge to the sufficiency of the evidence, Grant faces a high hurdle. We must uphold a jury verdict against an attack on sufficiency grounds so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). There was ample evidence from which a jury might have found beyond a reasonable doubt that the package Kirven carried contained heroin.

First, a jury could reasonably have found that the chemist tested the same package that left the vault, and that the package had not been tampered with in the interim. After all, vault and lab records indicate that the packaging and contents weighed precisely the same amount (3122.3 grams) at both locations. Moreover, there was no indication of tampering in the record. A rational jury could have found that the package had not been tampered with and therefore that the chemist tested the same substance that the inspectors seized.

In addition, the field test performed on the substance at the time it was seized also indicated that it probably was heroin. While we decline to speculate whether the field test alone would be sufficient to support a conviction, we do note that the field test's consistency with lab results lends strong support to the conclusions that the

package was not tampered with before reaching the lab and that the substance inside the package was heroin.

Finally, Grant's statement to Kirven at the conclusion of the September trip that the packages contained heroin and her warning to Kirven on the second trip not to discuss the packages on the plane because there might be agents around evidenced Grant's belief that the packages contained heroin and lent further inferential support to the conclusion that Kirven's packages in fact contained heroin. In short, while the chain of custody proof was not airtight and the government's case ultimately rested on inferences, a reasonable jury could have found that both packages contained heroin. This jury so found, and we decline to overturn that determination.

CONCLUSION

We have considered the remainder of Grant's claims and find them to be without merit. Accordingly, we affirm her conviction and sentence in all respects.