UNITED STATES of America,

v.

Wilfred BOKSHOVEN.

No. CR. 02–577.

United States District Court, E.D. Pennsylvania.

April 22, 2003.

Defender Association of Philadelphia, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

RUFE, District Judge.

Before the Court is the Motion for Judgment of Acquittal of Defendant Wilfred Bokshoven pursuant to Fed.R.Crim.P. 29(c) based upon the insufficiency of evidence presented at trial. For the following reasons, Defendant's Motion is DENIED.

## BACKGROUND

Defendant was charged with importing a controlled dangerous substance in violation of 21 U.S.C. § 952(a) following his arrest at the Philadelphia International Airport on August 22, 2002. After United States Customs inspectors observed Defendant retrieve his suitcase from the baggage claim, a United States Customs K–9 alerted positively to the suitcase, signaling the presence of a controlled substance therein. Defendant subsequently acknowledged ownership of the baggage and produced a key to open the suitcase. Upon inspection, a foam rubber mat was discovered to be secreted, glued to, and stitched into the bottom lining of the suitcase. Field testing indicated the presence of heroin.

The Customs inspectors then asked Defendant a series of routine questions, including what the purpose of his trip was and where he was staying. Defendant responded that he was in the United States to watch the Little League World Series and indicated that he was going to travel by taxi to attend the games in Williams-port, Pennsylvania, approximately 194 miles from Philadelphia. N.T. 1/7/03 at 42–44. Defendant, who avoided eye contact during the questioning, also told Inspector Scott Grimmi that he was staying at a hotel in Philadelphia, even though his customs declaration card indicated that Defendant was staying at the Wyndham Hotel, Route 73, Turnpike Exit 4, New Jersey, and a subsequent review of records by the Wyndham Hotel in Mount Laurel, New Jersey revealed that there were no reservations under the name of Wilfred Bokshoven between August 22, 2002 and September 5, 2002. N.T. 1/6/03 at 77–83; N.T. 1/7/03 at 95–98. Defendant told the inspectors that the suitcase had been given to him by an individual for whom Defendant was going to purchase sporting goods. N.T. 1/7/03 at 43. Defendant, who lived on the Dutch island of Curacao, also told the agents that he had purchased his airline ticket with cash on the day prior to departing. N.T. 1/7/03 at 49.

At trial, Grimmi, who had never previously seen heroin secreted in foam rubber, positively identified Government's Exhibit 11 to be the same foam mat that was removed from Defendant's suitcase, and the exhibit was admitted into evidence without objection. N.T. 1/6/03 at 84–89, 96. Similarly, United States Customs Supervisory Inspector John Ryan testified that Government's Exhibit 11 was the mat that was taken out of the lining of Defendant's suitcase on the night in question. N.T. 1/7/03 at 21. While testifying, Ryan also authenticated numerous photographs of the suitcase and foam rubber, and noted that the items were placed in an evidence bag along with a card with the names of the inspectors who participated in finding the narcotics. N.T. 1/7/03 at 19–22. Moreover, the fabric of the new condition suitcase seized from Defendant was identical in color, texture and design to the fabric which was affixed to the foam rub-

ber mat soaked with heroin that was secreted in the lining of the suitcase. *See* Government's Exhibits 1 and 11.

The Government also presented the testimony of Drug Enforcement Agency Forensic Chemist Stacey Turner, who analyzed the foam and tested it for narcotics on September 13, 2002, at a laboratory in New York. She was able to determine that Government's Exhibit 11 was the foam in question through her signature on the evidence envelope and the information on the evidence labels. As a result of her testing, Turner concluded that the 1,337 gram foam mat was comprised of 615 grams of heroin. N.T. 1/7/03 at 109–11.

Regarding the chain of custody of the foam mat, Turner testified as follows:

BY MR. VELEZ:

Q. Do you remember when you first saw Government's 11?

A. Yes, I do.

Q. When was that?

A. September 13th, 2002.

Q. Do you know how Government's 11 was delivered to your laboratory?

A. It was brought in by an agent to the evidence window at our laboratory.

Q. And once it gets to the laboratory, what's your first contact with you?

A. The agent who brings in the evidence also submits a DEA Form 7. That form is put into what I have as a backlog to work on. When I take out that specific form to work on that evidence, I then go to our DEA vault, or evidence vault, and obtain that piece of evidence to work on for that day or however long it takes me to work on that.

Q. Now, the condition that it's in now in the bag, is that the condition it was in when you first saw it?

A. No, it was not.

Q. Okay. Can you explain [how] Government's 11 ended up in [t]he bag the way it's packaged?

A. The inner bag in here is the original package that it came in. When I opened the bag, there was a piece of rectangular black fabric, and stitched in between that, was this gray foam-like substance, which I separated from the fabric, then broke it up into pieces. I then took parts of those pieces, further cut them up, so that they were finely ground, and used that as a sample, and then repackaged them when I was done with my analysis into the bags that they are in at now.

N.T. 1/7/03 at 108–09.

At the close of Defendant's case, Defendant moved for judgment of acquittal based upon the Government's failure to establish a sufficient chain of custody with regard to the heroin-saturated foam rubber mat, and the Court denied the Motion. N.T. 1/8/03 at 70–73.[1]

The jury subsequently rendered a verdict of guilty, and the instant post verdict motion followed. In his Motion, Defendant asserts that insufficient evidence was presented to establish that the item that was tested by Turner three weeks after the original seizure was the original item seized from Defendant at the Philadelphia Airport. Defendant argues that due to the Government's failure to show the specific chain of custody, there was insufficient evidence that Government's Exhibit 11 was the same foam rubber mat seized from Defendant's suitcase at the Philadelphia airport.

---

1. Defendant also previously moved for judgment of acquittal at the close of the Government's case. N.T. 1/7/03 at 149–51. However, the Motion made at the close of the Government's case was based upon the sufficiency of evidence generally and did not specifically address the chain of custody issue.

## DISCUSSION

■ A claim of insufficiency of evidence places a very heavy burden on a defendant. *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir.1990). The verdict of the jury must be sustained if, reviewing the evidence in the light most favorable to the government, a reasonable mind could find the defendant guilty beyond a reasonable doubt of every element of the offense. *United States v. Jenkins,* 90 F.3d 814, 817 (3d Cir.1996). In the case at bar, Defendant asserts that a gap in the chain of custody of the foam mat renders the DEA chemist's testimony insufficient to support the conviction.

■ To establish the chain of custody, the government need only show that it took "reasonable precautions to preserve the evidence in its original condition, even if all possibilities of tampering are not excluded." *United States v. Dent,* 149 F.3d 180 (3d Cir.1998) (citing *United States v. Kelly,* 14 F.3d 1169, 1175 (7th Cir.1994)). "Precision in developing the 'chain of custody' is not an iron clad requirement, and the fact of a 'missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect.' " *United States v. Howard–Arias,* 679 F.2d 363, 366 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). The chain of custody rule is merely a variation of the principle that evidence must be authenticated prior to its admission into evidence. *See* Fed. R.Evid. 901; *Dent,* 149 F.3d at 188–89.

As the Second Circuit wrote in *United States v. Grant,* 967 F.2d 81 (2d Cir.1992):

... Federal Rule of Evidence 901 requires as a condition precedent to admissibility a showing, by a preponderance of the evidence, that the thing offered is what its proponent claims it to be. In other words, if the government seeks to introduce a bag of drugs into evidence, it must first establish that the bag is what the government asserts it to be—the bag found at the scene of the crime. One way to establish that is to show the "chain of custody" of the bag....

\*   \*   \*   \*   \*   \*

■ A break in the chain of custody will not necessarily lead to the exclusion of the evidence. *United States v. Howard–Arias,* 679 F.2d 363, 366 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). Rather, "the ultimate question is whether the authentication testimony [i]s sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *Id.*

*Id.* at 82.

■ Viewing the evidence in the light most favorable to the Government, the jury could reasonably have found that Turner tested the same foam rubber mat that the Customs agents seized on August 22, 2002.[2] The inspectors responsible for seizing the suitcase and the foam rubber mat secreted therein, after field testing confirmed the presence of heroin, identified Government's Exhibit 11 as the same foam mat that they took from Defendant's suitcase. Photographs of the foam mat and suitcase taken contemporaneously with the mat's removal were authenticated at trial.

---

**2.** As noted above, Defendant did not challenge the admissibility of Government's Exhibit 11 during the trial. Even if such an objection based upon improper authentication had been lodged, this Court would have over-ruled it, concluding that the testimony of Grimmi, Ryan, and Turner satisfied the authentication rules. Any doubt regarding the chain of custody went to the weight, not the admissibility, of the evidence.

Additionally, Turner testified that the mat previously identified by Grimmi and Ryan was the mat from which she extracted heroin. And the foam mat and suitcase were introduced into evidence without objection. Moreover, there was no indication of tampering anywhere in the trial record.[3] A rational jury could have found that the foam rubber tested by Turner had not been tampered with and was the same foam seized from Defendant's suitcase.

Accordingly, the Court concludes that there was sufficient evidence to show that the foam rubber mat tested by the forensic chemist was the same mat seized from Defendant and that it contained heroin. Therefore, this Court will not disturb the jury's verdict.

## CONCLUSION

For the foregoing reasons, Defendant's Post Verdict Motion for Judgment of Acquittal is DENIED. An appropriate Order follows.

---

3. Defendant asserts that the "chain of custody" was challenged due to Special Agent Michael Ronayne's stating that he was aware of approximately 30 instances in the months preceding trial where persons had attempted to smuggle heroin into the country using foam rubber. Even if this testimony had been elicited, it alone would have been insufficient to overcome the presumption of regularity. *See United States v. Smith,* 308 F.3d 726, 739 (7th Cir.2002); *Dent,* 149 F.3d at 188 ("Absent actual evidence of tampering, a trial court may presume regularity in public officials' handling of contraband.") Moreover, it should be noted that the record reflects that the chain of custody issue was not argued to the jury and that no jury charge on this issue was requested by either Defendant or the Government.